May it please the Court, Steve Sadie from the Oregon Federal Public Defender representing Miroslav Fejfar. The emergency motion that brings this case before the Court involves a profoundly important question. Whether treaty-based statutory protections are negated by a later extradition treaty proceeding? In this case, the answer has to be no in order to comply with due process. In a footnote in the case of Berrapin, which is an extremely important one for this case, footnote 7, the Court explicitly left open the question of whether the issuance of an extradition warrant renders moot any pending asylum application. The detailed opinion of Immigration Judge Andrea Sloan at ER 107 spells out in detail how important it is to reach the removal — withholding of removal questions that are excluded from extradition proceedings by the doctrine of noninquiry. But the Court's opinion in Berrapin has been broadly misread to exclude any proceedings against torture or persecution in another country as long as there is an extradition proceeding, even if after it's occurred here, those proceedings commenced after the application had been made for relief from persecution in the immigration court. Could you describe the underlying immigration claims that he has, what his basis is for expecting persecution or torture? Yes. He is, as is included in the ERs, he has identified his actions against police corruption and that those actions and views and refusal to participate in problems involving police corruption that has led to his persecution and his fear of return. And the persecution was the conviction for which he never served a sentence? Not only that, Your Honor, but I believe that the opinion of the Immigration Judge sets out that he has made a sufficient claim that those claims have to be considered in order to comply with the mandatory terms of the withholding of a removal statute. Our assertion is that the Court should either find as a matter of the case or not. But I didn't see the Immigration Judge reaching the merits at all of these claims. Not at all. But I can't tell whether the BIA made some assessment of the merits when it thought the case didn't need to continue. It doesn't explain what its basis was. No. Not at all. They simply relied on Berrapin. They said, oh, we have an extradition proceeding. We don't have to do a darn thing now. We totally eliminate any opportunity to be heard, to have review of those critical questions. And those critical questions are articulated by the Immigration Judge in three ways that are fundamentally different. At 110, the judge says that the nature of the proceedings, the availability of relief, and the opportunities for judicial review of such determinations are markedly different in this case. So I'm not sure we're going to be able to do that. I guess what I'm struggling with is just I think in some case where someone has a really compelling withholding argument or a cat argument, there may be a due process problem. But I'm really struggling. I don't even see his asylum application in the record or his underlying immigration papers in the record here. So I'm really struggling with whether his case actually implicates this. Your Honor, I think that it's the doctrine of noninquiry is why it's not part of it, is because we cannot do that in the extradition process. That is why all of the cases in this area, including Berrapin's, talk about there's two separate and distinct operations. There's no business in the extradition case in evaluating the strength of a withholding of removal claim. That is solely in the province of the immigration courts. And so what we are being deprived of is the opportunity to be heard on those things. This is, again, extradition, the courts have been very emphatic. There is a doctrine of noninquiry that does not permit us to make the same types of claim that the immigration lawyer is going to be making in the proceedings in the immigration on the withholding of removal. That matter is what he is going to be deprived of, the opportunity to be heard ever, if he is taken out as is currently the reason why we filed an emergency motion. And this Court, there's nothing in the statutes that say that extradition moots all these treaty-based statutory rights. Well, I don't think it moots it. But the question is whether it's a due process violation if they, if the agency, the immigration agency decides not to move forward and stays it on its own. The immigrant, what the Court said in Berrapin is that they can hold it in abeyance. Right. Not that they can permanently terminate. What would happen with the No, but there's a difference between administrative closure and termination. And I, at least in the, in our context, the immigration context. So I'm not sure it's completely dead at the immigration courts. I think that the, you should be, in habeas corpus, we're looking at a functional analysis. What is the functional analysis here when the extradition warrant is being served, he's being directed to surrender himself to the Attorney General, to be handed over, to be placed in a jail, and be picked up by the foreign authorities, that that will no, and the government has said, that will moot his removal proceedings. And the question is, can those statutory, mandatory protections be trumped by this type of, of executive action? And. This executive action is based on a treaty, is it not? Between two countries? As. So we've got a little tension, don't we, between. We have two treaties. We have the refugee treaty. The treaty, and we've got some legal issues over here in immigration. Why don't we have to deal with the treaty issues first? The treaty issues can be resolved, but the extradition certification has to be conditional on completion of the other treaty-based statutory protections. The Supreme Court said in Cardoso-Fonseca, withholding of removal, and then it was deportation, is mandatory under the statute. And that is a, and it traces all the treaties that that is enforcing. Why would a extradition proceeding that has a specific non-inquiry provision limit a constitutional and statutory right to be heard on this very important protection? Well, let's just assume you, there was an extradition proceeding and you had no defense. There wasn't this statute of limitations issue. There wasn't this. It was clearly the person will be extradited, but he goes then into the immigration court and wants to have it stayed. Now, under those circumstances, would you say that we still have to sort out the immigration issues before the extradition? Yes. If he's going back to Fredonia where they're going to put him on a wall and torture him, he should have cat protections and be able to be heard in the immigration court on a persecution based on race or religion. Yes, that is exactly what we're saying. And the question is, does he have a nexus to a protected ground here? Yes. And this Court in Dessier v. Ilhart, 840, F3rd 723, used resistance against a kleptocracy in Haiti as a basis. But again, the immigration judge with jurisdiction over this has already looked at it and said, it would be improper for me not to rule on this before. It's not the purview of the extradition court to make those decisions, but what the extradition court is doing by putting its priority and is basically to negate, to eliminate, to violate the due process right to be heard on this matter. So let me ask you this. Let's assume that the – your client is granted relief under the Convention against Torture or Withholding of Removal. Do you think that moots the extradition process? I think that what would happen is very analogous to what happened in Clark v. Martinez and Zavidas v. Davis, which is that if you can't be returned safely, you're put into a status, but the safety of return is reviewed periodically. And so I think that that analogy would probably fit. But I think probably the extradition process could go forward anyway, don't you think? Not to the execution of the order to take the person back to be tortured. I think that that is exactly what we have signed on as a society as saying should not ever happen. And the United Nations – But, I mean, I think the theories may be distinct. You know, if he goes back to the country and he is being either tortured or something for reasons other – unrelated to the criminal prosecution, then there may be something – maybe a different matter. I think that the protections of the CAT and the withholding of removal are mandatory, that if those concerns for return are ameliorated, that he could be returned. But until then, they trump. They are the ones that those rights have to be recognized. Those rights have to be – and the United Nations paper that we submitted in the Rule 28J letter, we're the only country that doesn't clearly spell that out, either in the case law or the statutes. And it's this misunderstanding of Berrapin that has created this contradiction in our case. And we do have a claim that the type of review that occurred here is all wrong, because there's all this discretion being given on the question about lapse of time. Seventeen years ago, 2001, and there's – even though at the detention hearing, the lawyer for the Czech Republic said, oh, 2001, he must have been – he's been in the wind since then. Not true. Between 2001, 2009, we've established he was in the – in the Czech Republic for a little while, a five-year prescription period has lapsed. Well, didn't – didn't your client actually challenge that in the constitutional court in Czechoslovakia? We don't have any record information about that, except for what the Ministry of Justice says about it. We have no court opinions. We have our experts that have provided opinions. And what is totally different about this situation than other cases about saying, oh, well, foreign law is so complicated, what do we do? So I'm sorry, just to clarify your answer, you dispute that the Czech courts said what the government says they said? I'm saying that it's not in the record, because I don't know what the court said, whether it ruled on procedural grounds, what the arguments were made, or what the conclusions were. There is nothing in the record about what the Czech court said, except for what the Ministry of Justice said, in an adversary proceeding about the – this particular proceeding in the extradition matter. It's not a historical inquiry. Any Czech court? What about the Czech trial court? Weren't there – isn't there more than one Czech court that has said that this isn't time-barred at this point? The Czech courts have – that were mentioned in the records are at 119 and 122, where they're talking about the execution of the sentence using an invalid order and an – that they admit did not actually withdraw the earlier order. Under those circumstances, the – there has not been a finding by any court that says – that is in the record about this particular question. There have – there were representations made, but no actual opinions from the Czech courts or the litigation that led up to it. And I'd like to reserve the remaining time, if the Court's permission. Yes, certainly. Good morning, Your Honors, and may it please the Court. Christopher Smith for the United States. Your Honors, the district court correctly denied Miroslav Vejvar's petition for a writ of habeas corpus based on this Court's controlling precedent and the repeated and unequivocal statements of the Czech Republic that that country's statute of limitations had not expired. Mr. Vejvar has been convicted of two serious crimes and sentenced to three years of imprisonment. So your opposing counsel just said that there's nothing from a Czech court in the record. Do you agree with that characterization? Your Honor, I'd point the Court to ER-323, which is the letter that the United States Department of Justice received from the Ministry of Justice of the Czech Republic. In that letter, the competent Czech ministry explains, firstly, the Ministry of Justice of the Czech Republic would like to inform the United States Department of Justice that Mr. Vejvar's defense attorney repeatedly made the same arguments at the competent courts of the Czech Republic, even at the constitutional court. The letter goes on to say, the Constitutional Court of the Czech Republic expressly stated by its resolution, and it quotes their citations for the resolutions, that both orders to deliver Mr. Vejvar to prison were issued legally as according to the Czech law. And then it goes on to say, the sentence of imprisonment imposed on Mr. Vejvar is not statute barred for time, for lapse of time. Therefore, Your Honor, the Czech government, the Czech courts have expressly stated on this issue that the statute of limitations has not expired. As this Court said in Sands v. Venables, quote, the Court declined to rule on the procedural  and because we recognize the chance of erroneous interpretation much greater when we try to construe the law of a country whose legal system is not based on common law principles. Are the Czech court decisions available somehow? I mean, why do we only have the letter characterizing them? Your Honor, that's how the Czech government chose to provide the United States the information, as is the Czech government's right. That's presumptively admissible in an extradition hearing pursuant to 18 U.S.C. 3190 and the terms of the treaty, which says that articles that are transmitted through certain procedures, in this case through the Ministry of Justice to the Department of Justice, are admissible, shall be admitted in extradition proceedings. Therefore, it was competent evidence for the Court to rely on in the extradition proceeding itself. And indeed, the extradition magistrate, as well as the district judge, noted in those opinions, in each of their opinions, that the Czech courts had expressly rejected the argument that Mr. Fejfar raises here. And I assume the United States doesn't have any further documents on this? No, Your Honor, not that I'm aware of. But and I'd also point out that the Czech Ministry of Justice has provided an explanation for the reasoning of why the statute of limitations is it runs, has not run, so this is not a case, if there were to be some case of which I am not aware that there is one, where a court would override a foreign constitutional court's interpretation of its own law, here would not be that case, because the Czech government has also provided a very reasonable explanation of how the courts reach these decisions. So, Your Honor, as the Sixth Circuit said in a case called Bosic v. Stek, in instances like this, it's not the role of a Federal court to, quote, second-guess the courts and government of a foreign power in the interpretation of their own law. Such would violate comedy, it would potentially violate the treaty, and it would have foreign policy implications. In this case, Your Honor, we would submit that this Court, that this Court should affirm the district court on this ground, because the district court quite reasonably looked to the Czechs' interpretation of their own law. Now, Your Honors, I will turn, if the Court has no further questions on the statute of limitations issue, I'll turn to the immigration issue. And I think, as an initial matter, I want to point out that I think that Mr. Fetchfar's point is very important. I think it's very important that we look at this point by conflating immigration and extradition proceedings. Immigration proceedings and immigration hearings under Title VIII of United States Code determine one's ability to remain in the United States under immigration laws. However, if the statutory and treaty requirements of extradition are met, one may be extradited regardless of one's immigration status in the United States. So your position is if he had pursued his remedies and been granted relief under the Convention Against Torture, you could still extradite him? That's absolutely correct, Your Honor. And there's one example that I would point out that I think demonstrates that, and that's that the adjudication of one's immigration claims in immigration court has to do with one's immigration status. Now, no one has greater immigration status than a United States citizen, yet the U.S. has not passed a law to extradite its own citizens if the requirements have been made — been met. Indeed, in 18 U.S.C. 3197, Congress has — I'm sorry, 3196, Congress has expressly provided that the United States may extradite its own citizens. I think that that demonstrates — And you don't think the Convention Against Torture puts a limit on that? Oh, it certainly puts a limit on that, Your Honor. It's just two separate proceedings. The Convention Against Torture is considered by the Secretary of State before issuing a surrender warrant. I would point the Court to this Court. But what if the immigration courts had reached a determination on that issue? Would that be binding? No. It wouldn't because it's too — Why not? Well, it's too — ultimately, first of all, the — this Court's decision in Trinidadi-Garcia v. Thomas on Bonk explains the Convention Against Torture process and the judicial review entailed thereof in the immigration context. But it really is two separate inquiries, though. What the immigration court is looking at is whether or not this individual may be returned to another country as an ordinary citizen to carry on with life in that country based on the facts before the immigration court. What the Secretary of State is looking at, while ultimately the same standard that we will not return somebody to a country where they face — well, more likely than not face torture, it's different circumstances that they're being returned. They're being extradited pursuant to the protections of an international treaty, which include the rule of specialty. The treaty expressly provides that an individual extradited may not be tried for any other offense other than the one on which he was extradited. This treaty provides that once extradited, the individual may not be tried or punished for any political offense once extradition has occurred. And as Chief Judge Thomas pointed out in his concurrence in Trinidad v. Garcia v. Thomas, the Secretary of State in the extradition process is the best equipped to undertake this inquiry, because when an immigration judge is looking at the record before the immigration judge and whether this individual may be returned as an ordinary citizen to the other country, the Secretary in the extradition process may engage U.S. diplomatic interests abroad to both seek assurances from the foreign country that that individual will not be mistreated in any way, and also has the ability, frankly, once the fugitive is extradited, to ensure that the — that the State that has received the fugitive lives up to those obligations, or else there could be diplomatic recourse. That's why in Press-a-Platte v. — So even if the — say the immigration court makes a cat determination based on conditions in prison. So say this country is imprisoning gay people, this person is gay, they're — keep getting thrown in prison and they keep getting tortured in prison. You're saying the finding that this person is going to be tortured in prison would not carry over, there would be no binding effect? It seems very counterintuitive. Your Honor, first of all, based on Federal law, the Secretary will not extradite somebody to a foreign country if they're going to face torture. But the finding of the immigration judge is not preclusive on the Secretary of State for the reasons that Chief Judge Thomas pointed out in his concurrence in Trinidadi Garcia v. Thomas, which is that the Secretary has vast tools to potentially mitigate the concerns that the immigration judge might have had. For example, if an immigration judge finds that somebody could be tortured if they're returned to Prison A in a foreign country, the Secretary of State may very well agree with that and obtain an assurance from the country that that person will only be returned to Prison C and will not serve time in Prison A. Therefore, that's the reason for the rule of noninquiry, which this Court has recognized in Presiplat v. Binov and stated that it's long held that the Secretary of State has the power in extradition to be the adjudicator of humanitarian claims. That's rooted in Article II, the foreign affairs power. It's also rooted in this Court's case law, Lopez-Smith, Trinidadi Garcia. There's a long line of cases going back. Indeed, I am unaware of any court that has ever found that immigration proceedings in some way control the extradition determination. That's to the contrary of what both the BIA has held and what this Court has held in Berrapin, where on multiple occasions in the ---- Anderson, Well, in Berrapin, there are several places where the Court says we're not actually agreeing with the theory that this is moot, we're not actually reaching the idea about whether one needs to defer to the other. I mean, Berrapin has lots of caveats. So I don't really understand how the BIA cites Berrapin and creates this blanket rule. Well, Your Honor, I think the way that I look at it is, yes, Mr. Fegfarm may have he does have a right to have his immigration claims adjudicated before he is removed from this country pursuant to immigration law. This is on an entirely separate track. The immigration claims, he cannot be removed from the country under immigration law until his immigration claims are adjudicated. However, he is not being removed from the country under immigration law. He is being extradited pursuant to treaty and the Federal extradition statutes 18 U.S.C. 3181 and following. Therefore, it really is two separate ---- two separate inquiries, two separate systems. And the withholding of removal that the Mr. Fegfarm cites in Title VIII, basically the statute expressly states that if you find that somebody is going to be persecuted, they shall the attorney general shall not remove them. But removal in the immigration laws in Title VIII is removal in immigration proceedings. Title XVIII is extradition. It's an entirely separate proceeding. And that subsection of, I believe it's 8 U.S.C. 1231, I think it's B-3, doesn't apply to extradition, which is an entirely separate proceeding. If Your Honors have no further questions, I would ask that you affirm the district court, and thank you very much for your time. Roberts. Thank you. I just heard that there's not a bit of statutory language that allows the ---- that addresses this issue. And that's exactly what, at footnote 2 on ER-110, the immigration judge said. I've done my own independent research. They claim that this moots, that extradition moots the immigration procedure. It's nowhere in my ---- what I looked at, what the government showed me, and what you saw in this pleadings. They have not cited a single thing that supports that proposition. And if we were looking at statutory construction, what we'd be looking at is the very specific mandatory language of withholding of removal, the very general and nonspecific language of the last sentence in 3184, and follow Clark v. Martinez and say, let's avoid the constitutional problem and allow for the removal proceedings to be heard and decided. But so you would interpret the word removal to include extradition? Absolutely. The language of the treaties and the underlying language is putting them on the shores of another country. And is there any time limit? So this I.J. scheduled the hearing for 3 years in the future. I mean, is there any need for coordination that should happen, in your view? If they were worried about time, why were they stalling it? It's like putting concrete boots on and saying, how come you're going so slow? They could have expiated it. They could have not interrupted it. Any delay is on the government, not Mr. Fayefar. He's willing to go forward. He was ready to go forward. Three days before his hearing, they take him into custody. And right away, the Department of Homeland Security files the request to close. On the question of the Minister of Justice and what kind of proof we would expect, again, this is not historical facts about how a determination is made about the lapse of time. We have experts who have talked about it. It's a prescription. The as the So how can we question, though, this letter from the government characterizing the court decisions? I mean, without anything from you saying, look, I have the court decision, it doesn't say that, or something contrary, I don't understand how we have a basis to doubt the facts that are stated. I guess I would be looking at the same principle that the Court uses, which is briefs of parties are not evidence. If they have evidence, bring it in, show it. We brought in our evidence. They didn't bring in evidence. As a matter of fact, the evidence that they do bring in, they have the contradictory language claiming that in their motion for detention, saying that he was not present in the It seems that he fled the territory of the Czech Republic right after his conviction in 2001. That's at Dock 9-2 in the immigration proceedings. Then all of a sudden, oh, well, maybe it got 2008, maybe it got withdrawn and reissued. No, it didn't get sealed, but it's probably invalid. That's not the type of evidence you use when you have to establish subject matter jurisdiction and personal jurisdiction over him. It didn't happen here. Roberts. Thank you, counsel. Thank you. The case just argued will be submitted for decision.
judges: Thomas, Friedland, Zilly